[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 230 
This is a proceeding to determine heirship in the ancillary probate of the will of Theodora L. Hayward, a resident of the State of Colorado, brought by appellees, heirs of the decedent, under the provisions of Sections 38-1518 to 38-1521, A.C.A. 1939.
The facts out of which this matter arose are as follows:
Theodora L. Hayward died testate in Delta County, Colorado, on or about the 14th day of August, 1939, leaving an estate in Mohave County, Arizona, consisting of an undivided one-half of the real and personal property located in said County of Mohave then in the residue of the estate of her deceased uncle, John Watson Thompson, that was given and devised to her by him in his last will.
The decedent left a will dated July 27, 1939, in which she makes gifts to her heirs and other persons and bestows the remainder of her estate in trust for the Town of Paonia, Colorado, or the Paonia schools, pursuant to Clause Fourteenth, which reads: "Fourteenth: I give, devise and bequeath all of the residue of my estate to J. Harry Newton and C.D. Hailey in trust, and I direct that such residue be used by said trustees for any purpose deemed by them beneficial to the Town of Paonia, Colorado, or the Paonia schools."
On or about the 18th day of September, 1939, the last will of the testatrix, Theodora L. Hayward, was admitted to probate in the County Court of Delta County, Colorado, and letters testamentary thereon were issued to one J. Harry Newton, a resident of that county. On or about the 11th day of April, 1940, the Superior Court of Arizona, in and for the County of Mohave, admitted said will to ancillary probate, appointing the said J. Harry Newton as executor under said will. Winifred Van Hagen, who instituted the proceeding involved *Page 231 
in this case, appeared as contestant and filed her opposition to ancillary probate. The judgment of the Superior Court admitting the will to ancillary probate was affirmed by the Supreme Court of Arizona on March 3, 1941, Van Hagen v. Newton, 57 Ariz. 51,110 P.2d 956.
On October 4, 1943, Van Hagen filed her petition for the determination of heirship under Section 38-1518, A.C.A. 1939, followed by her complaint in said proceeding to determine heirship filed on December 15, 1943.
Based upon this petition the Superior Court in and for Mohave County, Arizona, Honorable J.W. Faulkner presiding, entered an order as provided by law, requiring all persons claiming rights or interest in said estate of said testatrix to appear December 14, 1943, and set forth their respective claims. This order was entered as of the same date the petition was filed and the following persons were named as parties to the proceedings; J. Harry Newton, the executor in ancillary probate, J. Harry Newton and C.D. Hailey, who are named as trustees in the residue clause of the last will of said deceased, Grace M. (Mrs. Robert) Birnie, Mabel Perry, Frances Hayward, James Hayward, Winifred Van Hagen, Charlotte I. Thompson and John Watson (Jack W.) Thompson, the executors or administrators of the estates of Harvey Hayward and Clara Amy Hayward, deceased; John Doe and Richard Roe, whose real names are unknown and who are therefore mentioned by fictitious names, they being the persons who claim some interest in said estate as heirs at law of said decedent, or as executors or administrators of the estates of Harvey Hayward and Clara Amy Hayward who were two heirs at law of said decedent but who have died since the date of the death of the said Theodora L. Hayward.
Thereafter, the executor and said trustees filed their motion to dismiss the action as barred by the one year statute of limitation, together with their Motion for Bill of Particulars and Answer to the Complaint.
On December 9, 1943, appellant, J. Harry Newton, in his capacity as executor, filed his disclaimer of interest in any controversy that may exist between the heirs of the deceased as to their respective interests in the estate of said deceased. On December 11, 1943, disclaimer was filed by James Hayward, Grace M. Birnie, Frances L. Hayward and Mabel Hayward Perry, heirs at law of the testatrix, disclaiming all interest in the property of the estate in the State of Arizona, and requesting distribution to be made in accordance with the desire of the testatrix, as expressed in her will.
The answer of Charlotte I. Thompson and John Watson Thompson sets up that they have heretofore conveyed and transferred to said Winifred Van Hagen all of their interest in and to all the property before mentioned, except certain cemetery lots, and asks to have distributed to them *Page 232 
only the two-sixths of the undivided one-half of the interest of the estate of said testatrix in and to said lots.
There is an appearance of the administrator, d.b.n.c.t.a., of the estate of Clara Amy Hayward, deceased, which was filed December 27, 1943, wherein she alleges and sets out her claim to heirship as the only descendant of the paternal grandparents of Theodora L. Hayward and, among other things, she alleges that by reason of the invalidity of Clause Fourteenth the residue of the estate did not pass to the trustees named, but to the heirs at law of said deceased Theodora L. Hayward, who died leaving no issue, and that under the provisions of Section 39-101, A.C.A. 1939, the estate should be divided in two moieties — one of which shall go to the paternal grandparents and their descendants, and that the descendants of the maternal grandparents are entitled to the other moiety, subject to disclaimers and renouncement of their several interests on file herein.
In each of the aforementioned proceedings, Winifred Van Hagen attacks Clause Fourteenth of the Hayward will, alleging that the same is ineffective and void, and that by reason thereof the testatrix died intestate as to the residue of her estate. Because of lack of notice to all the heirs this clause of the will was not considered in the first case appealed to this court from Mohave County, Van Hagen v. Newton, supra. In the instant case the action was tried on its merits in the Superior Court of Mohave County before the Honorable Levi S. Udall who, on December 16, 1944, rendered judgment in the proceeding in favor of the petitioner and declared, among other things, that said Clause Fourteenth is void and overruled the motion of the executor and trustees, appellants herein, for a dismissal of the proceeding on the ground that same was barred by the statute of limitation, Section 38-221, A.C.A. 1939; denied their Motion for a Bill of Particulars and Motion to Dismiss; held further that the matter was not res adjudicata in that no court had previously determined the validity or invalidity of Clause Fourteenth; that our statute requires that the executor be made a party in a proceeding to determine heirship where a construction of a particular provision of the will is sought; that such executor, however, must stand in the position of a "stakeholder"; granted the Van Hagen Motion for Judgment on the Pleadings against J. Harry Newton, as executor, and denied the executor's Counter Motion to Dismiss the proceedings against him as such executor; and also denied the executor's and trustees' Motion to Dismiss the Response of Sayles Gorham, administrator d.b.n.c.t.a., of the estate of Clara Amy Hayward, deceased.
It has been urged by the appellants that charitable trusts are "favorites" of the courts and, therefore, the declared intention of the deceased should be carried out. We are in accord with the universal *Page 233 
principle relative to giving effect, wherever possible, to the intention of the testator; however, we deem the proper approach of the court best expressed in Re Kline's Estate, 138 Cal.App. 514, 32 P.2d 677, 680: "Respondent makes the suggestion that, since legacies and devises for charitable purposes `are the favorites of the courts, * * * the language should be liberally construed so as to create a valid trust if possible.' Even though the fact be conceded that when, in the course of the operation of their proper functions in cases of this kind, in some scattered instances the courts may seem to have strained legal principles in decreeing the creation of charitable trusts, it cannot be accepted as a correct statement of a legal or equitable principle to say that in such situation the courts, as an institution, are required to show partiality in favor of litigants who would be benefited by such declaration. On reflection, it should be apparent that the courts can have no fixed policy which will admit of the operation of a principle by which one party to litigation will be favored to the detriment of the other party therein. * * *"
Therefore, in the case at hand, although the clear intention of the testatrix was that the trustees, Newton and Hailey, should apply the residue of her estate in ways beneficial to the Town of Paonia, or the Paonia schools, her good intentions alone cannot create a valid charitable trust where the language of the clause makes it possible for the property to be devoted to purposes other than "charitable" as defined by the law.
Appellants maintain that this is a direct attack on the validity of the probated instrument, which should have been filed within a year after the will was admitted to ancillary probate on April 11, 1940, in Arizona in accordance with Section 38-221, A.C.A. 1939. The appellees contend that this proceeding is not a will contest within the meaning of the one year statute of limitation. This point is set at rest in Re Hesse's Estate (McNutt v. Gercke), 62 Ariz. 273, 157 P.2d 347, 349. We quote: "* * * our statute (A.C.A. 1939, Sec. 38-201 to 38-226) governing probate and contest of wills expressly limits the issues that may be raised on a will contest to those involving (1) testator's competency to make a will, (2) his freedom at time of execution of the will from duress, menace, fraud or undue influence; (3) due execution and attestation of the will by testator and subscribing witnesses, and (4) any other substantial groundaffecting the validity of the will (Sec. 38-210); and expressly requires the court to admit the will to probate, if satisfied, from proof or facts found by jury, that (1) the will was duly executed; and (2) the testator when he executed the will was of sound mind and not acting under duress, menace, fraud or undue influence (Sec. 38-213). Thus, by the express provisions of those two sections the jurisdiction of the court is limited to *Page 234 
determination of `the factum of the instrument' — the will."
This court goes on to say that: "It would appear that here the plaintiff has mistaken the scope of a will contest. She should raise these questions during probate as an incident to the statutory proceeding to determine heirship, (Sec. 38-1518 et seq., A.C.A. 1939) then the court would have jurisdiction to construe the will, 3 Bancroft's Probate Practice 1934, Sec. 1200, or the validity of a clause may even be attacked on a petition for final distribution, as we pointed out in the case of Lowell v. Lowell, 29 Ariz. 138, 240 P. 280."
It clearly appears from the foregoing citations that the present proceeding cannot be called a will contest, as most of the leading authorities define a will contest as a proceeding to determine whether or not the instrument as a whole constitutes a valid will which is entitled to be admitted to probate.
It is illuminating to examine the Colorado cases and note what that court has to say concerning the question of what is necessary to constitute a valid public charitable trust, and whether or not the (Fourteenth) clause of the will here before us meets the necessary requirements. The case of Clayton v. Hallett,30 Colo. 231, 70 P. 429, 59 L.R.A. 407, 97 Am.St.Rep. 117, is in many respects similar to the case here under consideration. The Colorado Supreme Court held that the will created a valid public charitable trust even though the beneficiaries might be uncertain and indefinite. In fact, the court announced that indefiniteness and uncertainty as to the beneficiaries is one of the chief characteristics of a public charity as distinguished from a private charity, and that such characteristics do not invalidate a charitable trust of a public nature. That court goes on to say that the testator was quite definite as to the plan and manner in which the trustees should execute the trust and that they were given wide discretion in designating the beneficiaries who would, through the years, receive the benefits; that such discretion is not objectionable and is a necessary and usual provision in public charitable trusts.
Another Colorado case on the point is Robbins v. Hoover,50 Colo. 610, 115 P. 526, in which the clause setting up the trust was held to be void for uncertainty and indefiniteness in that no specific plan or method was provided for in carrying out the provisions of the trust. The Clayton case, supra, is here discussed at considerable length and the court distinguishes between them in that the testator in the Clayton case did provide for a definite plan of carrying out the trust provisions, but in the Robbins case no plan was provided for.
While the cy-pres doctrine as administered by the English Court under the 43rd Elizabeth Chapter is to some extent part of the law of Colorado, its details and remedies are not in force there. *Page 235 
See Clayton v. Hallett, supra; Fisher et al. v. Minshall et al.,102 Colo. 154, 78 P.2d 363. Except where the broad English Chancery doctrine is in force, the power of the court is much more limited in this kind of case. We have never adopted the cy-pres doctrine as part of the common law in this jurisdiction. Our courts will effectuate the testator's general intent, but not to the extent of making a will for him. The general rule is found in 14 C.J.S., Charities, § 39 et seq.:
"Indefiniteness of the ultimate beneficiaries is one of the characteristics of a public charity or charitable use; accordingly, uncertainty and indefiniteness as to the ultimate individual recipients are not by any means fatal to the validity of a charitable gift which in other respects is sufficient. * * *
"The above rules, however, refer to the uncertainty and indefiniteness of the individuals to be benefited, and not to the certainty of a class of individuals from whom the beneficiaries shall come. * * * The instrument creating the charitable gift must sufficiently define the beneficiaries so that the trust can be enforced by the courts. * * *" And authorities there cited.
The case of People v. Jovanovich, 103 Colo. 104, 83 P.2d 328, emphasizes that the intention of the testator should control in the interpretation of wills. We have also examined Pitman v. Colorado Nat. Bank, 113 Colo. 373, 158 P.2d 186. Both of these cases are cited in appellants' brief, as well as other Colorado cases involving charitable trusts, but only in Clayton v. Hallett and Robbins v. Hoover, supra, was the subject of uncertainty and indefiniteness treated. While it may be said that these cases hold that a testamentary provision for a charitable trust would be held valid even though no trustee was named or, where named, given a wide discretion, or though the particular beneficiaries were indefinite and uncertain, yet the Colorado courts do not go so far as to say that a trust provision will be upheld where no definite and certain plan or method of executing the trust for a recognized charitable purpose is clearly set forth in the will.
The Fourteenth Clause of the Hayward will fails even under the reasoning and holdings of the Colorado decisions to create a valid public charitable trust for the reasons that there is no plan or method of executing the trust appearing in the instrument itself, and there is nothing in the instrument limiting the use of trust funds to a recognized charitable purpose. The language used in the clause empowers the trustees to use the trust funds"for any purpose deemed by them beneficial to the Town of Paoniaor the Paonia schools." As aptly pointed out in appellees' brief, the trustees under this authority might well deem it to be beneficial to the Town of Paonia to build and operate a race track, department store, or any other commercial venture. *Page 236 
Counsel for appellees in their brief classify the various types of charitable trusts, and to facilitate understanding and proper application of the law, we here insert this table.
Classification of Types of Trusts on Which Appellants Rely
I. A direct devise to a named government or political subdivision. (Generally held valid, though there is some conflict. See 82 A.L.R. 478.)
II. A devise to trustees to hold for the use of a government, (a) where the will specifically names a charitable purpose (as to build a public park for a city or to plant trees for beautification, et cetera) (generally valid); or, (b) the trustees are directed to use the property for a charitable and only a charitable purpose. (Here there is a conflict as to the validity of this latter type.)
III. A direct devise to a named charitable institution (valid).
IV. A devise to trustees to hold for a named charitable institution, or unnamed, but serving a charitable and only a charitable purpose (valid); or, to trustees to hold for a charitable and only charitable purposes, to be selected by the trustees. (Here, the authorities are divided.)
The authorities generally support the foregoing classification. A careful review of the cases relied upon by appellants indicates that none is directly in point. We quote from appellants' leading case, Class I, Dickenson v. City of Anna et al., 310 Ill. 222,141 N.E. 754, 30 A.L.R. 587. In this case the devise wasdirectly to the city, without intervention of trustees. The court held that the validity of the gift was not affected by failure to specify that it had to be used for charitable purposes, reasoning that any legal use by the city necessarily would have to be "charitable" within the technical meaning of the word. In re Schleier's Estate, 91 Colo. 172, 13 P.2d 273, may be said to follow Classification II. This is a case wherein the testator provided for a trust fund, one-half of which was to go to charitable institutions for the care of children and aged persons, the other half was to be conveyed by the trustees in one form or another directly to the city and county of Denver, Colorado, for the completion or beautification of the Civic Center. It will be noted that whatever the trustees did, yet half of the trust fund had to be for the use of the city and county of Denver and accepted by said city and county. Sec. 1, Art. XX, of the Colorado Constitution recognizes as valid gifts and trusts for the city and county of Denver. In re Nicholson's Estate,104 Colo. 561, 93 P.2d 880.
The next class of cases falls under No. III, as cited by appellants. In re Durham's Estate, 203 Iowa 497, 211 N.W. 358,359. The devise there was directly to a charitable organization, "Salvation Army located in Council Bluffs, Iowa." This devise *Page 237 
was held to be valid. In Nixon v. Brown, 46 Nev. 439, 214 P. 524, and Ould v. Washington Hospital, 95 U.S. 303, 5 Otto 303,24 L.Ed. 450, the gifts were held to be charitable and valid.
Appellants cite the following authorities under Classification IV. King v. Rockwell, 93 N.J. Eq. 46, 115 A. 40, likewise upheld because involving a bequest to be used for "charitable purposes." In re Dulles' Estate, 218 Pa. 162, 67 A. 49, 12 L.R.A., N.S., 1177, the court construed "benevolent" as meaning "charitable" under the rule of ejusdem generis. Chicago Bank of Commerce v. McPherson, 7 Cir., 62 F.2d 393, 289 U.S. 736, 53 S.Ct. 596,77 L.Ed. 1484, supports this rule. However, in each of the foregoing cases the court's decision is based upon particular facts in determining whether or not "benevolent" (or a like word) is used to mean "charitable and only charitable." See Annotation, 115 A.L.R. 1123. In none of these cases does the court recognize the validity of a bequest to trustees who are vested with unlimited discretion, and who can use an estate for any purpose "deemed by them beneficial."
Based upon a review of the cases, the court concludes that the Fourteenth clause of the Hayward will does not devise any property to the Town of Paonia or the Paonia schools, nor is any property devised to either a charitable or beneficial use, but on the contrary, vests the trustees with the power to use the property in any manner which the trustees deem beneficial to the Town of Paonia or Paonia schools. Such devises are generally held to fail as charitable trusts because (1) they do not compel the trustees to use the property for a strictly charitable purpose; (2) the purpose of the trust is incapable of being determined, and the court cannot control the trustee's discretion; and (3) the beneficiaries are not sufficiently designated.
It is essential that the trustees are compelled to devote the property to and only to a charitable use in order for a devise to come within the meaning of "charitable trusts." See Zollman, Am. Law of Charities (1924), page 264; Tudor on Charities (5th Ed., 29 London 64). In re Sutro's Estate, 155 Cal. 727, 102 P. 920; 1 Restatement of the Law of Trusts, Sec. 123, pp. 306, 307; 2 Restatement of the Law of Trusts, Sec. 398, p. 1198; 3 Page on Wills 593; 10 Am.Jur., Charities, sec. 100, pp. 655, 656.
There is a long line of decisions holding that where a trust is for a "benevolent" purpose it fails because "benevolent" includes matters which are not necessarily charitable, this being the general rule. In Re Johnson's Estate, 100 Or. 142, 196 P. 385,390, 1115, the court says: "As heretofore noted the will does not contain the word `benevolent' nor the word `charity.' * * * Benevolency is a much broader term than charity and embraces objects and purposes which are not charitable. *Page 238 
The will cannot be sustained as creating a public charity."
Webster's New International Dictionary defines "beneficial" as "conferring benefits, useful, profitable, helpful, advantageous, contributing to a good end." It is plain that every act which is beneficial is not necessarily charitable.
The point of law raised in appellants' brief to the effect that when a devisee accepts the benefit of a provision in his favor under the will he is precluded from setting up any claim which would defeat the operation of the will, is not properly before us for determination because of falling under the well-established rule that an issue cannot be raised for the first time on appeal which was not presented to the trial court. City of Glendale v. Coquat, 46 Ariz. 478, 52 P.2d 1178, 102 A.L.R. 837, and authorities therein cited.
J. Harry Newton, in his capacity as executor of decedent, joined in appellants' opening brief filed herein, devoted in part to reargument of matters heretofore disposed of by the order of court in a former hearing wherein appellees' motion to dismiss the appeal by Newton, as executor, was granted. Hence as to him as executor, is res adjudicata.
Under the state of this record we are not required to determine the question of whether or not the Fourteenth clause of the will creates a valid private trust, as the issue was not considered nor raised by appellants in the lower court.
In conclusion, as to the validity of the Fourteenth clause, we hold it is not enforcible as a valid charitable trust because it does not bind the "trustees" to devote the property to a charitable and only a charitable purpose.
The trustees not being bound to devote the devise exclusively to a charitable purpose, the trust fails and the property goes to testatrix' heirs at law in conformity with and as set out in the judgment of the learned trial judge.
Accordingly the judgment of the lower court is affirmed.
STANFORD, C.J., and LA PRADE, J., concurring.
NOTE: Justice LEVI S. UDALL having disqualified, as he was the trial judge, the Honorable C.C. FAIRES, Judge of the Superior Court of Gila County, was called to sit in his stead. *Page 239